OPINION
{¶ 1} Attorneys Dennis A. Lieberman and Victor A. Hodge appeal from the trial court's decision and entry rejecting their request for additional compensation and declining to find unconstitutional a Miami County commission resolution that caps appointed-counsel fees in criminal cases.
 {¶ 2} In their sole assignment of error, the appellants contend the trial court erred in finding the resolution constitutional as applied to them in this case.
 {¶ 3} The record reflects that the appellants were appointed to represent Mark D. Sells, an indigent defendant who was charged with aggravated murder and aggravated robbery. The indictment included a death-penalty specification, which the State dismissed shortly before trial. A jury then found Sells guilty on both charges, and the trial court sentenced him accordingly.
 {¶ 4} After the trial, the appellants moved for extraordinary appointed-counsel fees at a rate of $95 per hour up to a total of $75,000. In support, they argued that the compensation was reasonable and consistent with rates established by the Ohio public defender's office. The trial court overruled the motion, however, noting that R.C. § 120.33 authorized the Miami County commissioners to establish their own fee schedule for assigned counsel in cases involving indigent defendants. The trial court then observed that the Miami County commissioners had established such a fee schedule. Finally, the trial court determined that it was bound to follow the county's schedule.
 {¶ 5} In response to the trial court's ruling, the appellants filed a "motion to modify" its denial of their request for extraordinary fees. In support, they argued, inter alia, that the county's fee schedule was unconstitutional, as applied, because it provided them with inadequate compensation for their work. Although the appellants did not specify the nature of the alleged constitutional violation, they relied exclusively on Arnold v.Kemp (1991), 306 Ark. 294, 813 S.W.2d 770, which involved a claim that inadequate pay for appointed counsel in criminal cases constitutes a violation of due process and a taking of property without just compensation.[1] The trial court rejected the appellants' constitutional argument, reasoning that "[s]imply because the cap may not reflect the true value of counsel's services in this case does not result in the conclusion that the resolution is unconstitutional." This timely appeal followed.
 {¶ 6} In their lone assignment of error, the appellants again assert that Miami County's fee schedule operates as an unconstitutional taking of private property and a violation of due process as applied to them. In support, the appellants reason that their time and skill constitute "property" and that when the government takes such property for the representation of indigent defendants, they must receive just compensation. The appellants contend they collectively spent nearly 800 hours working on behalf of their client but were limited by Miami County commissioners' resolution 99-05-835 to compensation of only $20,000 each. According to the appellants, this inadequate level of compensation constitutes a taking of property without just compensation and without due process.
 {¶ 7} At the outset, we note that the appellants have not challenged the Miami County commissioners' statutory authority to enact the fee schedule at issue. Nor have they disputed the trial court's finding that it is statutorily obligated to follow the schedule. Rather, as set forth above, the sole issue raised on appeal is whether the fee schedule itself is constitutional, as applied to the appellants, when it caps their compensation for representing Mark Sells at $20,000 each.
 {¶ 8} Upon review, we believe the appellants have failed to demonstrate an unconstitutional taking of their property without just compensation and without due process. Even assuming, arguendo, that the appellants' time constitutes "property" that is capable of being taken by the government within the meaning of the Fifth and Fourteenth Amendments, the record contains no evidence that they were compelled to represent Sells. Instead, they voluntarily accepted an assignment to do so and, therefore, implicitly agreed to the county's fee cap. In re Ashton B.,
Sandusky App. No. S-03-003, 2003-Ohio-3092, ¶ 3 ("Counsel who accept appointment as court-appointed attorneys impliedly accept the fee schedule approved by the county commissioners and are bound by that schedule."). This fact is fatal to their constitutional argument.
 {¶ 9} As one Massachusetts court recently recognized in addressing an argument similar to the one advanced by the appellants:
 {¶ 10} "*[G]overnment action does not amount to a taking without legal compulsion, which is not present where plaintiffs voluntarily subject themselves to known obligations. * * * Plaintiffs here do not claim to have been compelled to accept assignments from CPCS. To the contrary, they point out that many attorneys are deciding to remove themselves from the Private Counsel Division list. Those who accept assignments do so with notice of the applicable compensation rates. Therefore, plaintiffs' past and ongoing agreements to provide representation under this arrangement cannot constitute a taking by any of defendants." Machado v. Leahy (Jan. 3, 2004), 17 Mass.L.Rprt. 263, 2004 WL 233335 (citations omitted).
 {¶ 11} Similarly, in Garelick v. Sullivan (2nd Cir. 1993),987 F.2d 913, the U.S. Second Circuit Court of Appeals rejected a takings claim brought by anesthesiologists who challenged statutory caps on the fees they could charge Medicare patients for their services. In rejecting the claim, the appellate court reasoned in part:
 {¶ 12} "[W]here a service provider voluntarily participates in a price-regulated program or activity, there is no legal compulsion to provide service and thus there can be no taking. * * *
 {¶ 13} "The anesthesiologists * * * are under no legal duty to provide services to the public and to submit to price regulations. The OBRA-89 limiting charge provisions do not require anesthesiologists, or any other physicians, to provide services to Medicare beneficiaries. The challenged provisions simply limit the amounts non-participating physicians, anesthesiologists in this case, may charge those Medicare beneficiaries whom they choose to serve. They retain the right to provide medical services to non-Medicare patients free of price regulations. Because they voluntarily choose to provide services in the price-regulated Part B program, the plaintiff anesthesiologists do not have a viable takings claim." Id. at 916-917.[2]
 {¶ 14} Much like the attorneys in Machado and the anesthesiologists in Garelick, the appellants herein retained the right to decline court-appointed representation of indigent defendants if they were dissatisfied with Miami County's fee schedule. Given that they voluntarily accepted appointment to represent Sells, no governmental compulsion deprived them of any property and no compensable taking or due process violation exists.
 {¶ 15} The Arkansas Supreme Court decision in Arnold v.Kemp (1991), 306 Ark. 294, 813 S.W.2d 770, is not to the contrary. Unlike the appellants, the court-appointed attorneys inArnold expressly objected to their appointments. Id. at 296. The same is true in other cases cited in the appellants' brief. See DeLisio v. Alaska Superior Court (1987), 740 P.2d 437, 438
(addressing whether "a private attorney may be compelled to represent an indigent criminal defendant without compensation" where the attorney refused the appointment and was held in contempt of court); State ex rel. Stephan v. Smith (1987), 242 Kan. 336, 747 P.2d 816, 821-822, 842 (involving attorneys who refused or resisted appointment and concluding that "when an attorney is required to spend an unreasonable amount of time on indigent appointments so that there is a genuine and substantial interference with his or her private practice, the system violates the Fifth Amendment"). Because the appellants were not compelled to represent Sells against their wishes, the present case is readily distinguishable from Arnold, DeLisio, andStephan.
 {¶ 16} A final case cited by the appellants, Makemson v.Martin County (1986), 491 So.2d 1109, fails to make clear whether court appointments to represent indigent defendants were mandatory or voluntary. Although the appointments appear to have been voluntary, we note that the primary focus of Makemson was protecting the indigent defendant's Sixth Amendment right to counsel rather than counsel's right to just compensation. TheMakemson court found a fee statute unconstitutional "when applied in such a manner as to curtail the court's inherent power to ensure the adequate representation of the criminally accused." Id. at 1112.
 {¶ 17} In our view, however, whether a fee cap may operate to deprive a particular indigent defendant of his Sixth Amendment right to the effective assistance of counsel presents a different question than whether the cap deprives an attorney who voluntarily agrees to accept an appointment thereunder of his property within the meaning of the Fifth and Fourteenth Amendments. If the existence of a fee cap results in a given defendant being unable to obtain effective representation, then he may have a valid Sixth Amendment argument. It does not follow, however, that an attorney who voluntarily agrees to accept a criminal appointment subject to a fee cap also has a viable takings claim. Whereas the fee cap at least theoretically could deprive an indigent defendant of his Sixth Amendment rights, it cannot deprive an attorney who volunteers for appointment of his Fifth Amendment right to just compensation because, as explained above, government compulsion is lacking. Moreover, there is no evidence or argument in this case that the existence of Miami County's fee schedule operated to deprive the appellants' client of his Sixth Amendment right to the effective assistance of counsel.
 {¶ 18} Based on the reasoning set forth above, we are unpersuaded by the appellants' argument that the fee schedule established by the Miami County commissioners violates their rights under the Fifth and Fourteenth Amendments. The appellants' assignment of error is overruled, and the judgment of the Miami County Common Pleas Court is hereby affirmed.
Fain, J., and Walters, J., concur.
(Hon. Sumner E. Walters, retired from the Third Appellate District, sitting by assignment of the Chief Justice of the Supreme Court of Ohio).
[1] In addition to their constitutional argument, the appellants asked the trial court to award additional funds to their client's private investigator to cover his out-of-pocket expenses. They also asked the trial court to award them an additional $12,000 even if it found that the Miami County commissioners' fee schedule was constitutional. The appellants have not raised these other arguments on appeal. Therefore, we have no occasion to address them.
[2] The Second Circuit also rejected the anesthesiologists' argument that professional ethical rules obligated them to treat Medicare patients, thereby supporting their takings claim. The appellate court observed that "such self-imposed requirements do not constitute the kind of governmental compulsion that may give rise to a taking." Garelick, 987 F.2d at 917-918. By the same token, we would be disinclined to find that an attorney's ethical obligation to represent indigent clients is sufficient to establish the governmental compulsion necessary to support a takings claim. In any event, the appellants have made no such argument.